Our next case is Thomas Crisp v. U.S. Postal Service, 2025-1104. Mr. Glazer. May it please the Court, Counsel. As Mr. Crisp's lawyer, we have a daunting task. We're asking you to reverse an MSPB decision, and we've got the burden to show that it was arbitrary or capricious or not supported by substantial evidence. I respectfully submit to you that this is that case where we can show that we do have a record of evidence to show that the Board's decision was egregiously wrong under the 12 Douglas factors. Let me point out first that Mr. Crisp had an unblemished service record before his errors occurred. He served for nine years, Your Honors. Counsel, your problem is partly that he was a supervisor, and that relates to what the Board said was a loss of confidence and credibility. Yes, Your Honor. That's a problem with the workforce. It is a problem, Your Honor. I'd like to address why I believe that they are exceptional circumstances here. The evidence in the record showed, and it was unrebutted by the agency, that my client had several people that said that they respected him, they did not lose confidence in him, and in fact – What does that have to do with the Postal Service having confidence? Well, the people that said they lost confidence in him, the decision-makers, I submit to you that the record does not support their determinations, and I'd like – Really? And that's because you'd rather use the cross-examination than Ms. Wilcox's letter? Well, when I asked Ms. Wilcox about why she reached the decision she did, Your Honor, she could not explain satisfactorily why a lesser penalty was not appropriate, nor could she explain why the Postal Service – You don't find it satisfactory. Well, I don't, but I believe under the law it's not satisfactory either, Your Honor. I mean, I believe, again, the rules in this case – Stated satisfactory reasons? I disagree with those reasons, Your Honor. My client disagrees with those. Again, I think the issue – That's the problem. You disagree, it's not for us to agree or disagree. We're not fact-finders. We're not listening to the witnesses, judging their credibility. Right, I understand that, Your Honor. But what I'm saying, I disagree, I'm tying it to the predicate, which is the evidence. The evidence that we put in showed – keep in mind, the record reflected that Mr. Grayley believed that my client might go into the Postal Service in a drug-induced haze because he was using marijuana. And that's not supported by his record, by his service to this country, and by everything that predated. In other words, they made all these assumptions that were not supported by the evidence. And that is egregiously wrong, Your Honor. That's where I'm coming from. I understand that I disagree with it, of course, but I also believe that the evidence truly shows that if they thought this man was a danger, if they thought this man was a threat, if they thought that he eroded the confidence of the Postal Service – Possession of marijuana, a felony under U.S. law. I believe – I don't do criminal law, Your Honor, but I honestly can't speak to whether it is or not. I know it's prohibited. I know it's prohibited down there. I do know that he did have a gun on the property – Scheduled narcotic, correct? Yes, Your Honor, it is. And he explained why he had it on him. He did not have a card, a medical marijuana card for that, Your Honor. Even if he had, that's under state law, correct? That is, and I understand – and that's another issue that we have to agree with. I realize, and because you mentioned it, in West Virginia, oddly enough, there is a law that says you can have guns on the employer's premises. But again, that doesn't matter because this is federal law. But I really do believe that my client had devoted himself to his employment for nine years, and he made mistakes. He admitted he made mistakes. This isn't a case where he says, I didn't do it. This isn't a case where he said, what I did wasn't wrong. He's acknowledged that. That's part of the calculus for Douglas. Basically, it's our position that when you look at what happened here, they looked at the charges. The judge looked at the charges and said, look, this is very serious. You lose. That's it. You lose. The judge didn't want to hear my evidence about how they didn't have any security before he went into the building. If you believe that my client is dangerous, Your Honor, if you believe that he's a threat, then you don't treat him the way the Postal Service has treated him after this came to rise. I mean, again, the world has changed in the last 30 years. We have security measures. If you think somebody is a danger, you act like it. Actions speak louder than words. In this case, the Postal Service's actions, Ms. Wilcox's letter, they don't reflect a real sincere belief that they thought my client was a danger that they're telling him and this court. That's the problem I have with it. If you really believe someone's a danger, then act like it. I really respectfully submit they're paying lip service to the Douglas factor. It's required for the deciding official on the board to find that Mr. Crisp was a danger or a threat to his co-workers in order to conclude that bringing a firearm onto the premises was a serious offense? Your Honor, I don't think that that needs to be part of the bill of particulars or included in it, but I do think it's part of the calculus when you look at it. It's a mitigating factor and it's also, it goes to the idea of like, this was not where he flouted the rule. The first criteria says, look, was it minor, inadvertent, or technical? We submitted it was. The gun that he had was stored in his car. It was locked. We submit that was inadvertent. Again, this was not a situation where my client was thumbing his nose at his agency and saying, I'm breaking the rule and I'm not even going to admit I broke the rule. He acknowledged it. And again, they had different options here. There are several options. The first option is they do nothing. That would be ridiculous. The second option is they suspend him with pay. That wouldn't work either. The third option, which we proposed, is you suspend him without pay. You suspend him for a time period. You could suspend him for a long time period, but the last option they chose, you're gone, that's it, no quarter. We submit that is clear error and egregiously wrong when you look at the Douglas factors. Basically, we've maintained all along that they looked at the seriousness of this and they said, no quarter, you lose. It's too serious. You're supervisor, Mr. Chris, you're gone. And really, that's where we are in this. I mean, I submit this is that unusual case where you do have substantial evidence. When you look at the scales of justice, the side of evidence on one side as opposed to the other is so overwhelming that we submit it should be reversed. Again, this man had a good record, a good career. He was a military vet. He suffered PTSD as a result of his service. And as a result of two mistakes, he's gone. He lost a great job. And I just think the penalty is completely disproportionate to what happened to this gentleman. I understand the court's concerns, but I think when we're looking at it practically, you know, Mr. Chris has more than served a punishment for this. And I'll reserve for rebuttal unless you have Mr. Hoffman. Your Honor, Mr. Hoffman, on behalf of the United States Postal Service. Excuse me, Your Honor. Isn't the penalty a bit harsh? Your Honor, that you're coming. He was and the gun was in a locked glove compartment. Your Honor, you bring up a good point. We could all, including Mr. Glazer, including myself, including Your Honors, we could all think the punishment is too harsh. But that's not the question, Your Honor. The question is, is what Ms. Wilcox did and what the board upheld, is that in compliance with the law? So in order for Your Honor to, we can think it's too harsh, but the question is, is it so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion? And that's the question, Your Honor. And we would say that that is, that question is answered in the negative. It is not an abuse of Ms. Wilcox's discretion. And Your Honor touched on it earlier, as far as you are not fact finders. You were not there to hear the witnesses. You did not take the evidence and none of us were there when Ms. Wilcox made this adjudication and then it was upheld by the MSPB. So we would submit, Your While people may feel that it's perhaps too harsh, that we would argue that it is squarely within the discretion that Ms. Wilcox had and that the board had in upholding it. I would only make two points in response to what's. I would add. Yes, Your Honor. I think it's too harsh too, but I agree with you on the standard over again. Two, I would like to address Mr. Chen's question about security. The question is not regarding credibility, is not, is Mr. Crisp a threat? I don't think, if you read the testimony from Ms. Wilcox, she basically says she did not, you know, believe him to be a threat. The question is, is did he have the credibility to enforce these rules going forward? Right? And that's not just one rule. It's not the gun rule or it's, it's two rules. It's the drugs and, and the gun. So it's, it's not whether he's a security threat. It's his credibility. I already addressed my second point. If Your Honors don't have any, if Your Honors do not have any questions, I will go the rest of my time. We just respectfully request that the court affirm the decision of the board. Thank you, Your Honors. Thank you, Mr. Hoffman. Mr. Glazer. Yes, Your Honor. And I'll be brief too. I think, I would hope that most of us could agree that it is too harsh. And I, I certainly respect Mr. Hoffman's position, the agency's position. But I've maintained throughout that it is an abuse of discretion to apply the penalty here the way it did. As, as an old aphorism goes, you don't use a hatchet to remove a fly from somebody's forehead. And this, this was a hatchet. And the bottom line is when you look at the evidence, it's pretty clear that Mr. Crisp hadn't done anything wrong. He, I mean, when you consider someone who's worked for nine years, that's, that's a pretty long time. And he'd supervised these persons. Now, I, I do understand he's a supervisor. How can you say he didn't do anything wrong? Until, until, until he was disciplined. Oh, well. Let me clarify, Your Honor. Let's put it this way. He wasn't caught. Well, you know, that's, I mean, we're, that's true. I was just, but as far as the evidence, there was no indication that he transgressed. But as far as the, the credibility issue that Mr. Hoffman raised, the idea that he wouldn't, and then I think this dovetails into your, your, your comment, Judge Wallach, the idea that he wasn't caught before. I don't think the record supports a determination that he wouldn't enforce the rules, that he would allow people to disobey rules about guns on the property or contraband on the property. That's, that's the I have is like, you can't make speculation as the basis for this decision, especially given the inferences we have here. I mean, again, we have a lot of people, I, I'm in West Virginia where a lot of people have firearms in my state. And they testify that a lot of people that work at the Postal Service has firearms. But at the end of the day, you know, when Mr. Crisp was invited back onto the premises, they didn't act as if he were a threat. And I, I really think that does on the fact that they are saying one thing, but they're do treating him another way. And that goes to how they're determining his credibility and supervisory authority. I mean, again, I, I certainly understand we have a difficult burden in overturning this case, but I wouldn't have traveled and appealed to this Honorable Court unless I really believed that we had that case. So with that, unless you have questions, I'll, I'll respectfully submit. Thank you. Both counsel, the case is submitted.